# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LaKEITH L. McCOY,<br><br>        Plaintiff,<br><br>    v.<br><br>GARIKAPARTHI, et al,<br><br>        Defendants. | Case No. 1:13-cv-01495-DAD-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 58)<br><br>**FOURTEEN (14) DAY DEADLINE** |

**I.  Introduction**

Plaintiff LaKeith L. McCoy ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds against Defendants Garikaparthi, Steiber, Keeler, and Chavez ("Defendants") for violation of Plaintiff's Eighth Amendment rights arising from the alleged deprivation of adequate food.

Currently before the Court is Defendants' motion for summary judgment, filed April 19, 2018.[1] (ECF No. 58.) Plaintiff filed his opposition on July 30, 2018, (ECF No. 64), and Defendants filed their reply and objections on August 28, 2018, (ECF Nos. 67, 68). For the reasons set forth below, the Court recommends that Defendants' motion for summary judgment be granted.

---

[1] Concurrent with the motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. (ECF No. 41, p. 40.); see Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1988); Klingele v. Eikenberry, 849 F.2d 409, 411–12 (9th Cir. 1988).

1

## II. Legal Standard

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Id.

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. See Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." Id. (citing Celotex, 477 U.S. at 323). In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Id.

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." F.T.C. v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis omitted). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. Id. at 929; see also Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S.

at 587 (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." Soremekun, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." Anderson, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. See Richards v. Nielsen Freight Lines, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

In arriving at these findings and recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

### III. Discussion

#### A. Evidentiary Objections

Defendants object to certain of Plaintiff's evidence, statements, and opinions submitted in opposition to Defendants' motion for summary judgment. As noted above, not every objection will be addressed by the Court individually, as doing so is neither necessary nor is that the practice of this Court in the summary judgment context. For the sake of clarity and to the extent it is appropriate, certain individual objections have been addressed by the Court below. Other objections are better dealt with here, in general terms.

The hearsay objections are overruled. Declarations which contain hearsay are admissible for summary judgment purposes if they can be presented in admissible form at trial. Fonseca v. Sysco Food Servs. of Ariz., Inc., 374 F.3d 840, 846 (9th Cir. 2004). Furthermore, "[i]f the significance of an out-of-court statement lies in the fact that the statement was made and not in the truth of the matter asserted, then the statement is not hearsay." Calmat Co. v. U.S. Dep't of Labor, 364 F.3d 1117, 1124 (9th Cir. 2004). At this stage, the Court did not find the hearsay

objections raised by the Defendants to be preclusive of the evidence submitted.

Finally, given the Court's duty to determine whether there exists a genuine dispute as to any material fact, objections to evidence as irrelevant or lacking in foundation are both unnecessary and unhelpful. See e.g., Carden v. Chenega Sec. & Protections Servs., LLC, No. CIV 2:09-1799 WBS CMK, 2011 WL 1807384, at *3 (E.D. Cal. May 10, 2011); Arias v. McHugh, No. CIV 2:09-690 WBS GGH, 2010 WL 2511175, at *6 (E.D. Cal. Jun. 17, 2010); Tracchia v. Tilton, No. CIV S-062919 GEB KJM P, 2009 WL 3055222, at *3 (E.D. Cal. Sept. 21, 2009); Burch v. Regents of Univ. of Cal., 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006).

### B. Undisputed Material Facts ("UMF")[2]

1. Plaintiff, LaKeith McCoy, claims he has an allergy to eggs and that he was being denied adequate food because he did not receive a dietary supplement from his primary care physician, Defendant Garikaparthi, or a food substitution from kitchen supervisors, Defendants Chavez, Keeler, and Steiber. Plaintiff also claims that other portions of his meals were contaminated with eggs. (ECF No. 10, First Amended Complaint ("FAC") pp. 4–9.)

2. Plaintiff claims that his trays would come with the eggs mixed in with or on top of other food items. He claims that this prevented him from eating those other food items and he was denied an adequate meal. (FAC pp. 4–7.)

3. Plaintiff was housed in a security housing unit, so his food trays were delivered to him by custody staff in his cell. (Pl.'s Dep. 26:7–9, 57:6–14; Chavez Decl. ¶ 4; Keeler Decl. ¶ 3.)

4. Defendant Garikaparthi did not prepare, serve, or deliver inmate food trays, and did not personally witness any cross contamination of Plaintiff's food trays. Kitchen supervisors Defendants Chavez, Keeler, and Steiber also did not prepare, serve, or deliver inmate food trays, and they did not personally witness any cross contamination of Plaintiff's food trays. (Garikaparthi Decl. ¶¶ 15, 20; Keeler Decl. ¶ 4; Steiber Decl. ¶ 4; Chavez Decl. ¶ 3; see also Pl.'s Dep. 69:20–25, 70:1–16.)

---

[2] See Defendants' Statement of Undisputed Facts, (ECF No. 58-3), and Plaintiff's Opposing Statement of Undisputed Material Facts, (ECF No. 64, pp. 10–16). Unless otherwise indicated, disputed and immaterial facts are omitted from this statement and relevant objections are overruled.

4

5. Plaintiff's medical records do not reflect that he was ever tested and officially diagnosed with an egg allergy, but do contain notes regarding Plaintiff's egg allergy. (Feinberg Decl. ¶ 7; Garikaparthi Decl. ¶ 9; see also Pl.'s Dep. 29:10–17, 32:5–11; ECF No. 64 p. 21–23, Pl.'s Opp'n, Ex. A.)

6. The California Department of Corrections and Rehabilitation ("CDCR") provides all inmates with a feeding program that assures they receive an adequate diet. This is accomplished by establishing a food control program based upon a ration of each food item sufficient in quantity to maintain an adequate diet and assure a menu pattern which is acceptable to the inmate population. (DOM § 51130.21; Chavez Decl. ¶ 9.)

7. The parameters and qualifications for inmates to receive dietary supplements and special diets is established through the inmate health care policies and procedures. When an inmate requests a special diet due to a claimed food intolerance or allergy their primary care physician will evaluate and determine if the allergy can be properly managed by educating the inmate to avoid the identified food. (Feinberg Decl. ¶¶ 4, 8; Garikaparthi Decl. ¶ 5.)

8. Inmates allergic or intolerant of a readily identified food will be educated to avoid the offending food, but no food substitution will be given. (Feinberg Decl. ¶ 4; Garikaparthi Decl. ¶ 7; Keeler Decl. ¶ 6; Steiber Decl. ¶ 6; Chavez Decl. ¶ 6.)

9. CDCR's outpatient dietary intervention procedure states that the CDCR menu purposefully contains an average of 300 to 400 calories per day more than required for the average person. This calorie buffer allows patient-inmates to choose not to eat certain foods, either due to food sensitivity or general dislike, without compromising nutritional health. (Feinberg Decl. ¶ 5, Ex. B; Garikaparthi Decl. ¶ 4; Keeler Decl. ¶ 10; Steiber Decl. ¶ 10; Chavez Decl. ¶ 10.)

10. Additionally, the guidelines for managing a food allergy or sensitivity state that prison food service staff is not required to provide inmates with any special food substitutions. The guidelines also state that avoiding the problem food is the inmate's responsibility. (Keeler Decl. ¶ 8, Ex. B.)

///

| | |
|---|---|
| 1 | 11. Plaintiff was told it was his responsibility to avoid foods with egg protein. (Pl.'s |
| 2 | Dep. 32:7–11; Keeler Decl. ¶ 8, Ex. A.) |

11. Plaintiff was told it was his responsibility to avoid foods with egg protein. (Pl.'s Dep. 32:7–11; Keeler Decl. ¶ 8, Ex. A.)

12. Plaintiff received a copy of the guidelines for managing a food allergy or sensitivity, which included a list of foods that contain egg protein that he should avoid. (Pl.'s Dep. 32:7–25, 33:1–14; Keeler Decl. ¶ 8, Ex. B.)

13. Plaintiff claims he was malnourished and requested a dietary supplement. (FAC pp. 7–9.)

14. There are several factors that must be considered when determining whether or not an inmate needs a food supplement. The need for a nourishment or supplement for moderate to severe protein/calorie malnutrition due to metabolic deficiency or metabolic response to injury/illness is evidenced by: (1) significant weight loss of ten percent or more over the prior six months; (2) serum albumin less than 2.5 milligrams per deciliter (mg/dL); or (3) body mass index (BMI) less than 18. (Feinberg Decl. ¶ 8; Garikaparthi Decl. ¶ 5.)

15. Plaintiff was treated by Defendant Garikaparthi on January 3, 2013, February 5, 2013, and April 24, 2013. (Feinberg Decl. ¶ 11; Garikaparthi Decl. ¶ 11.)

16. Based on Plaintiff's weight, body mass index, and serum albumin levels during the time he was in the care of Defendant Garikaparthi, the treatment of Plaintiff's food allergy was in compliance with the established medical services policy and procedure. (Feinberg Decl. ¶ 15; Garikaparthi Decl. ¶¶ 12–14, 16–17; see also Pl.'s Dep. 80:9–14, 81:25, 82:1–2.)

17. Plaintiff has also been seen by various medical professionals, before and after Defendant Garikaparthi's treatment, who did not provide him with a nutritional or dietary supplement because he did not qualify under the established inmate medical services policy and procedure. (Feinberg Decl. ¶ 19.)

**C. Analysis**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by

demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096; Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012).

Deliberate indifference is shown where the official is aware of a serious medical need and fails to adequately respond. Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1018 (9th Cir. 2010). Deliberate indifference is a high legal standard. Simmons, 609 F.3d at 1019; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). The prison official must be aware of facts from which he could make an inference that "a substantial risk of serious harm exists" and he must make the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994).

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer, 511 U.S. at 847, and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted). Prison officials must ensure that inmates receive adequate food, clothing, shelter, medical care and personal safety. Farmer, 511 U.S. at 832.

"Adequate food is a basic human need protected by the Eighth Amendment." Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996). The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health. LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993). However, the Ninth Circuit has found that "[t]he sustained deprivation of food can be cruel and unusual punishment when it results in pain without any penological purpose." Foster v. Runnels, 554 F.3d 807, 812–13 (9th Cir. 2009) (finding the denial of sixteen meals in twenty-three days a sufficiently serious deprivation for Eighth Amendment purposes).

In their motion for summary judgment, Defendants contend that Plaintiff's self-diagnosed egg allergy did not qualify him for a food substitution or supplement, based on the established inmate medical services policies and procedures. Specifically, Defendants argue that Defendant Garikaparthi's treatment was within the standard of care and not deliberately indifferent to any serious medical need, that CDCR's heart healthy menu provided Plaintiff with enough calories

for adequate nutrition even without eating eggs and egg protein, and that Defendants Chavez, Keeler, and Steiber did not personally prepare, serve, deliver, contaminate, or witness contamination of Plaintiff's food trays. In addition, Defendants argue that they are entitled to qualified immunity. (ECF No. 58-2.)

Plaintiff, in turn, argues that his chief complaint is that the food he receives is in smaller portions than required by the CDCR feeding program, and that the food was contaminated with eggs. As a result, he cannot eat a majority of food on the tray, and was therefore in need of a dietary supplement. (ECF No. 64.) In reply, Defendants argue that Plaintiff primarily relies upon the allegations of his complaint to support his position, and that he has otherwise failed to provide evidence to support his contentions. (ECF No. 67.)

### 1. Defendant Garikaparthi

Plaintiff's argument that Defendant Garikaparthi denied him medical care by failing to order him a dietary supplement or substitution in response to his egg allergy is unavailing. First, although there is some dispute regarding whether Plaintiff was officially diagnosed by a medical professional with an egg allergy, the undisputed evidence demonstrates that Defendant Garikaparthi treated Plaintiff as though he had received an official diagnosis. (UMF Nos. 5, 11, 12, 16.) Accordingly, the undisputed evidence further shows that Defendant Garikaparthi followed CDCR policy while treating Plaintiff's egg allergy and in reviewing Plaintiff's medical records, and under those parameters Plaintiff did not qualify for a dietary supplement. (UMF Nos. 7, 16, 17.)

Though Plaintiff argues that his weight dropped as low as 139 pounds following the identification of his egg allergy, following a peak weight of 185 pounds when he entered the prison system, Plaintiff does not provide the date at which his weight dropped to 139, or the date that he entered the prison system. (See ECF No. 64, p. 18.) Plaintiff also does not provide any evidence that even at a weight of 139 pounds, and his claimed height of "nearly 6' 0" tall," that his BMI calculation dropped low enough to qualify him for a dietary supplement. (See id.)

Rather, the undisputed evidence demonstrates that Defendant Garikaparthi considered the relevant policies, conducted an assessment based on Plaintiff's medical records and health at the

time of his treatment of Plaintiff, and determined that Plaintiff did not qualify for a supplement. (UMF No. 16.) Specifically, Plaintiff's medical records state that he was treated by Defendant Garikaparthi on January 3, 2013, February 5, 2013, and April 24, 2013, only. (Garikaparthi Decl., Ex. A.) During those appointments, Plaintiff's height was recorded as 69 inches, and his weight was recorded at 146, 149, and 151 pounds, and Plaintiff's BMI was calculated at 21.56, 22, and 22.3, respectively. (Id.) Defendant Garikaparthi states that, based on Plaintiff's records, Plaintiff's BMI never dropped below the threshold of 18, and he did not have a substantial weight loss over a period of six months, as required under CDCR policy. (Id. ¶ 16.) Thus, based on Plaintiff's medical history, medical procedures, and Defendant Garikaparthi's training, knowledge, and expertise, it was determined that Plaintiff did not qualify for a supplement for his food allergy pursuant to CDCR outpatient dietary intervention procedures. (Id. ¶¶ 16, 18.)

Under Federal Rule of Evidence 701, Plaintiff, a layperson, is not qualified to offer medical opinions or conclusions based on his symptoms or the course of his medical treatment. Plaintiff's unsupported opinion that he required a dietary supplement or substitution, or that he was being provided an insufficient quantity of food, is not admissible. Only an expert witness with specialized knowledge may determine whether Defendant Garikaparthi's conduct was within the appropriate standard of care, whether Defendant's actions or failure to act were the cause of any harm, or if the denial of a dietary supplement caused Plaintiff harm.

Plaintiff presents only his own unsupported assertions that Defendant Garikaparthi acted unreasonably in failing to order him a dietary supplement. At most, Plaintiff's declarations raise a question as to whether there was a lapse in Defendant Garikaparthi's professional judgment. In other words, there may be an issue of fact as to whether Defendant acted negligently. However, well-established precedent is clear that any perceived lapse of Defendant's professional judgment in this context would not equate to an Eighth Amendment violation. See Toguchi, 391 F.3d at 1057 ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.") (citation omitted).

This evidence, construed in favor of Plaintiff, is insufficient to raise a genuine dispute for trial as to whether Defendant "disregarded an excessive risk to inmate health and safety" as is

required to show deliberate indifference.  See Toguchi, 391 F.3d 1057.  The Court concludes that there is no genuine issue of material fact preventing summary judgment in favor of Defendant Garikaparthi concerning the failure to order Plaintiff a dietary supplement.  Defendant Garikaparthi treated Plaintiff the same as a patient with an official diagnosis of an egg allergy, considered the applicable factors for inmates to receive dietary supplements under CDCR policy, and based on Plaintiff's medical history and Defendant Garikaparthi's professional expertise determined that a supplement was not necessary.  Therefore, summary judgment should be granted as to Defendant Garikaparthi.

### 2. Defendants Chavez, Keeler, and Steiber

With respect to Defendant Chavez, Keeler, and Steiber, Plaintiff has failed to provide evidence, beyond his bare assertions, that these Defendants were personally involved in the preparation, service, or delivery of his food trays.  At most, the undisputed evidence shows that Defendants Chavez, Keeler, and Steiber supervised kitchen staff, not that they had any personal involvement in food service or preparation.  (UMF No. 4.)  Again, Plaintiff's bare allegations, without any foundation, that Defendants personally witnessed cross-contamination of his food is purely speculative, and unsupported by evidence for a reasonable fact finder to consider.  Finally, CDCR policy provides that food service staff is not responsible for providing dietary supplements to inmates with food restrictions, and Defendants cannot be held liable on that basis.  (UMF No. 10.)

Based on the foregoing, the Court finds that Plaintiff has failed to raise a genuine dispute for trial regarding his claims against Defendants Chavez, Keeler, and Steiber.  There is no evidence to demonstrate an actual link between the Defendants' actions or inactions and the alleged deprivation of inadequate food or contaminated food, or that Defendants acted in a manner that was out of compliance with CDCR policy with respect to dietary supplements.

### 2. Qualified Immunity

Defendants also assert that the Court should grant summary judgment on the basis of qualified immunity.  However, the Court finds that this argument need not be reached, based upon the above determination regarding the undisputed facts in this case.

**IV.     Conclusion and Recommendations**

For the reasons explained above, IT IS HEREBY RECOMMENDED that Defendants' motion for summary judgment, (ECF No. 58), be granted.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 26, 2019**              /s/ Barbara A. McAuliffe            _
                                                                    UNITED STATES MAGISTRATE JUDGE